# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

United States of America,

|  |  |
|---|---|
| Plaintiff, | Case No. 15-cr-20040-01 |
| v. | Judith E. Levy<br>United States District Judge |
| Derrick Taron White (D-1), | Elizabeth A. Stafford<br>Magistrate Judge |
| Defendant. | |

_____/

## ORDER DENYING DEFENDANT WHITE'S MOTION FOR RELEASE FROM CUSTODY [228]

On April 17, 2017, this Court entered judgment after Defendant Derrick White pleaded guilty to (1) conspiracy to possess with intent to distribute 1000 kilograms or more of marijuana in violation of 21 U.S.C. § 841(b)(1)(A)(vii), 21 U.S.C. § 841(a)(1), and 21 U.S.C. § 846; (2) possession with intent to distribute 1000 kilograms or more of marijuana in violation of 21 U.S.C. § 841(b)(1)(A), 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 2; and (3) conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h), 18 U.S.C. § 1956(a)(1)(A)(i), 18 U.S.C. §§ 1956(a)(1)(B)(i)–(ii), and 18 U.S.C. § 1957. (ECF No. 163, PageID.1919.)

Although his sentencing guidelines ranged between 262 and 327 months' imprisonment, the Court sentenced Defendant to 132 months.

Defendant has been serving his sentence at Federal Correctional Institution (FCI) McKean in Pennsylvania. He now seeks compassionate release and an order that he be permitted to serve the remainder of his sentence in home confinement in Michigan. (ECF No. 228.) More specifically, he argues that the danger posed to him by the novel coronavirus (COVID-19) pandemic constitutes an "extraordinary and compelling reason" under the compassionate release statute requiring his immediate release.

For the foregoing reasons, Defendant's motion is DENIED.[1]

## BACKGROUND

---

[1] There is another concern with this petition. Before defendants may bring a compassionate release motion to the courts, 18 U.S.C. § 3582(c)(1)(A) requires that defendants either a) apply for release through the Bureau of Prisons and fully exhaust all administrative remedies; or b) wait 30 days after notifying the Warden that they intend to apply for compassionate release. *Id.* It is undisputed that Defendant has neither exhausted his administrative remedies nor waited 30 days from the date of his email request for compassionate release.

Defendant asks the Court to waive his failure to comply with these statutory requirements. (ECF No. 228.) However, because the Court would deny Defendant's motion on the merits, the Court need not address this issue.

2

On March 13, 2020, the President of the United States declared a national emergency due to COVID-19. *Proclamation on Declaring a national Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak*, The White House (Mar. 13, 2020) https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/. On March 22, 2020, the Governor of Michigan issued the following statement: "The novel coronavirus (COVID-19) is a respiratory disease that can result in serious illness or death. It is caused by a new strain of coronavirus not previously identified in humans and easily spread from person to person. There is currently no approved vaccine or antiviral treatment for this disease." Executive Order, No. 2020-20 (Mar. 22, 2020). In Pennsylvania, where Defendant resides at FCI McKean, the Governor issued a stay-at-home order on April 1, 2020 and recently extended it due to the ongoing need to mitigate the spread of COVID-19.[2] Press Release, *Gov. Wolf, Sec. of Health Extend Statewide*

---

[2] As of the May 7, 2020, Pennsylvania implemented a "phase order" allowing for the limited reopening of businesses in certain counties and a continued stay-at-home order for other counties. https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-take-actions-on-stay-at-home-orders-issue-yellow-phase-orders/.

*Stay-at-Home   Order   Until   May   8* (April   20,   2020),
https://www.governor.pa.gov/newsroom/gov-wolf-sec-of-health-extend-
statewide-stay-at-home-order-until-may-8/.

In the short period of time since the national emergency was
declared, the exceptionally dangerous nature of the COVID-19 pandemic
has become apparent. On March 10, 2020, the Governor of Michigan
announced the state's first two cases of COVID-19 and simultaneously
declared a State of Emergency. Executive Order, No. 2020-4 (Mar. 10,
2020). The number of new cases is growing exponentially. As of May 20,
2020, that number is now at 52,350 confirmed cases and 5017 reported
deaths.        *See        Coronavirus*,        Michigan.Gov,
https://www.michigan.gov/coronavirus/0,9753,7-406-98163_98173---
,00.html.  COVID-19 has a high risk of transmission, and the number and
rate of confirmed cases indicate broad community spread.  Executive
Order, No. 2020-20 (Mar. 22, 2020).

On March 23, 2020, the Centers for Disease Control and Prevention
(CDC) acknowledged that correctional and detention facilities "present[]
unique challenges for control of COVID-19 transmission among
incarcerated/detained persons, staff, and visitors." *Interim Guidance on*

*Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Centers for Disease Control (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html. Specifically, the CDC noted that many detention conditions create a heightened risk of danger to detainees. These include: low capacity for patient volume, insufficient quarantine space, insufficient on-site medical staff, highly congregational environments, inability of most patients to leave the facility, and limited ability of incarcerated/detained persons to exercise effective disease prevention measures (e.g., social distancing and frequent handwashing). *Id.*

The CDC recommended that all correctional facilities take preventative measures, including: ensuring an adequate supply of hygiene and medical supplies, allowing for alcohol-based sanitizer throughout facilities, providing no-cost soap to all inmates for frequent handwashing, cleaning and disinfecting frequently touched surfaces several times per day, performing pre-intake screening and temperature checks for all new entrants, increasing space between all detained persons to at least six feet, staggering meals, and having healthcare staff

perform regular rounds. *Id.* Even if all of the CDC's interim recommendations are followed, and reports suggest that they are not, the Court is concerned that such measures will prove insufficient to stem deadly outbreaks. *See, e.g.*, *New York City Board of Correction Calls for City to Begin Releasing People From Jail as Part of Public Health Response to COVID-19*, N.Y.C. Bd. of Corr. (Mar. 17, 2020), https://www1.nyc.gov/assets/boc/downloads/pdf/News/2020.03.17%20-%20Board%20of%20Correction%20Statement%20re%20Release.pdf (arguing that, despite the "heroic work" of Department of Correction and Correctional Health Services staff "to prevent the transmission of COVID-19 in the jails and maintain safe and humane operations, the City must drastically reduce the number of people in jail right now and limit new admissions to exceptional circumstances"). Indeed, on March 26, 2020, Attorney General Barr issued a separate directive ordering the Director of the Bureau of Prisons to "prioritiz[e] home confinement as appropriate in response to the COVID-19 pandemic . . . to protect the health and safety of BOP personnel and the people in our custody." *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic*, Att'y Gen. (Mar. 26, 2020).

Research shows that prisoners and jail detainees are more likely than the general population to report experiencing infectious diseases, indicating that these individuals face a heightened risk during this pandemic. Laura M. Maruschak et al., *Medical Problems of State and Federal Prisoners and Jail Inmates, 2011-12*, U.S. Department of Justice, Bureau of Justice Statistics, (2016), https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf. By way of example, on March 24, 2020 there was one prisoner who tested positive for COVID-19 in the Michigan prison system. Gus Burns, *Michigan prisons prep for possibility of coronavirus outbreak among inmate population*, M-Live (Mar. 26, 2020). As of May 19, 2020, the Michigan Department of Corrections confirmed that there are 3,089 cases of COVID-19 and that 59 people have died in its prisoner population. https://medium.com/@MichiganDOC/mdoc-takes-steps-to-prevent-spread-of-coronavirus-covid-19-250f43144337.

Nationally, Bureau of Prison (BOP) detention facilities across the country are experiencing similar trends. As of May 13, 2020, BOP has confirmed at least 2,818 cases of COVID-19 and 50 deaths among federal inmates and 262 cases among detention facility employees and

personnel. *COVID-19 Coronavirus*, Federal Bureau of Prisons, https://www.bop.gov/coronavirus/. The Court understands and appreciates the severity of the situation.

## LAW AND ANALYSIS

Defendant seeks compassionate release and reduction of his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). The relevant provision provides:

> (c) The court may not modify a term of imprisonment once it has been imposed except that—
>
> > (1) in any case—
> >
> > > (A) the court, upon motion of . . . the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section § 3553(a) to the extent that they are applicable, if it finds that—
> > >
> > > > i) extraordinary and compelling reasons warrant such a reduction.

*Id.*

There are two key questions of law in compassionate release cases. The first is whether a defendant satisfies the statutory requirement to either "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or wait 30 days "from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.* The second is whether extraordinary and compelling reasons, as well as the defendant's own history and characteristics, warrant a reduction of the defendant's sentence. *Id.*

### *Exhaustion of Administrative Remedies*

As an initial matter, Defendant acknowledges that he has not exhausted his administrative remedies. However, as set forth above, the Court rejects Defendant's motion on substantive grounds, so it need not analyze exhaustion, other than to note that it rejects the United States' argument that Defendant's failure to exhaust strips the Court of jurisdiction to consider this motion. (*See* ECF No. 236, PageID.4184–4188.)

In 2019, the Supreme Court found that a similar statutory exhaustion scheme in Title VII was a "prerequisite to suit" that was not jurisdictional, but rather "properly ranked among the array of claim-

9

processing rules." *Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1843 (2019). Noting that the Court has undertaken "[t]o ward off profligate use of the term ['jurisdiction']," the Court held that a statutory prescription may become jurisdictional in one of two circumstances: 1) when Congress explicitly incorporates a requirement into a jurisdictional provision of the statute; or when 2) "A long line of Supreme Court decisions left undisturbed by Congress attache[s] a jurisdictional label to the prescription." *Id.* (internal citations omitted).

In this case, 18 U.S.C. § 3582(c)(1)(A) is not in the jurisdictional section of the "crimes and criminal procedure" statutes, it is instead in the section dealing with sentencing. Additionally, there are no Supreme Court cases attaching a jurisdictional label to 3582(c)(1)(A). Thus, this section is not jurisdictional, but rather a "claim-processing rule" that may be addressed by the Court. *Fort Bend Cty.*, 139 S. Ct. at 1849-50 (noting that Title VII's time limit for filing a charge with the EEOC is a clear "claim-processing rule," along with "other time prescriptions for procedural steps in judicial or agency forums"). Accordingly, the exhaustion requirement is not jurisdictional, and White's failure to exhaust does not deprive this Court of subject matter jurisdiction to hear

this case. For a more thorough discussion of this, see this Court's decision in *United States v. Agomouh*, No. 16-20196 (E.D. Mich. May 18, 2020) (corrected order granting motion for compassionate release).

### *Extraordinary and Compelling Reasons Warranting Reduction of Sentence*

There are three components to a compassionate release merits-analysis: 1) whether extraordinary and compelling reasons warrant a reduction in sentence, as described by the United States Sentencing Commission; 2) whether the § 3553(a) factors—"to the extent that they are applicable"—render the reduction inappropriate; and 3) whether Defendant would be a danger to the public.

In defining "extraordinary and compelling reasons," the compassionate release statute directs the Court to consider the United States Sentencing Guidelines. 18 U.S.C. §3582(c). United States Sentencing Guideline § 1B1.13 articulates that extraordinary and compelling circumstances exist, in relevant part, in the following instances:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a

11

specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

> (I) suffering from a serious physical or medical condition,
>
> (II) suffering from a serious functional or cognitive impairment, or
>
> (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

(D) Other Reasons.—As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

*Id.*

Here, Defendant argues that his underlying health conditions—high blood cholesterol and pre-diabetes—place him at increased risk of severe illness and death from a COVID-19 infection, making the COVID-19 pandemic an extraordinary and compelling circumstance that justifies compassionate release. The documents he attached to his motion are BOP health services clinical encounter notes regarding his health

12

conditions. (ECF No. 240-1 *SEALED* PageID.4211–4244.) The notes indicate he is receiving treatment for elevated cholesterol.

COVID-19 is a new disease, and while there is limited information regarding risk factors for severe illness, the CDC has not included either elevated blood cholesterol or pre-diabetes in its list of underlying conditions that may put people at a higher risk of severe COVID-19 illness.[3] https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Therefore, Defendant's underlying conditions do not put him at a high risk of a dire outcome or death from COVID-19. Accordingly, extraordinary and compelling circumstances do not justify compassionate release.

Next, Defendant contends that release is warranted because his sixty-seven year old mother is completely disabled and requires twenty-four hour care, which he could provide if he were released. (ECF No. 228, PageID.4096.) He contends that he has a sibling who is not able to provide care for his mother. (*Id.*) While the Court finds his desire to help his mother admirable, the compassionate release statute, 18 U.S.C.

---

[3] Diabetes is included in the CDC's list of risk factors for severe illness. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. However, pre-diabetes is not included in this list.

§3582(c) defines the "extraordinary and compelling" reasons set forth in United States Sentencing Guideline § 1B1.13, and care of a parent is not an articulated reason for a reduced sentence. Rather, § 1B1.13 provides for only one type of "Family Circumstances," specifically, the death or incapacitation of a spouse or caregiver to the defendant's minor children. Federal Sentencing Guidelines § 1B1.13. Defendant admits this is not applicable to the circumstances with his mother. (ECF No.228, PageID.4096.) Nor does caring for one's aging parent fall under the "Other Reasons" category of the section § 1B1.13. Defendant cites no law in support of his contention that it does.

Finally, Defendant also mentions the disproportionate impact of COVID-19 on African American communities. (ECF No. 228, PageID.4095.) Indeed, the CDC has noted that "current data suggest a disproportionate burden of illness and death among racial and ethnic minority groups." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/racial-ethnic-minorities.html. And in Michigan, "African Americans account for 33% of COVID-19 cases and 40% of the deaths, according to state data, though they make up 14% of the state's

14

population." https://news.umich.edu/african-americans-and-covid-19-in-michigan-u-m-experts-available/.

While the Court takes this emerging data very seriously, Defendant does not argue that being African American on its own, with no other underlying risk factors, is a risk factor equivalent to having an underlying medical condition such as diabetes or severe obesity.

Accordingly, Defendant has not shown that extraordinary and compelling reasons justify his release, and the Court therefore need not analyze the factors set forth in 18 U.S.C. §3553(a).

## CONCLUSION

For the reasons set forth above, Defendant's motion is DENIED.

IT IS SO ORDERED.

Dated: May 26, 2020                          s/Judith E. Levy
Ann Arbor, Michigan                          JUDITH E. LEVY
                                             United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 26, 2020.

s/William Barkholz
Case Manager

15